## AFFIDAVIT

I, Brendan Hickey, having been duly sworn, hereby depose and state:

1. I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco and Firearms & Explosives ("ATF"), assigned to the Boston, Massachusetts Field Division, and have been so employed for approximately four years. As an ATF Special Agent, I am responsible for conducting investigations of federal firearms, arson and explosive laws. Prior to joining ATF, I worked as a Special Agent with the United States Immigration & Naturalization Service ("INS") for a period of approximately five years, as a United States Border Patrol Agent for a period of two years, and in local law enforcement, for approximately one and a half years. As a result of my experience, I have been involved in numerous investigations relating to narcotics and firearms.

2. The statements contained in this affidavit are based on my own investigation and on information provided to me by other ATF agents and local law enforcement authorities.

3. I make this affidavit in support of a criminal complaint charging two individuals named Michael Pina ("PINA"), born in 1970, and Daniel Gomes ("Gomes"), born in 1978, with possession of crack cocaine with the intent to distribute it, in violation of Title 21, United States Code, section 841(a)(1). I also submit this affidavit in support of an application for a warrant to search PINA's first floor apartment at 26 Sycamore

Street, 1st floor apartment South, New Bedford, Massachusetts, as well as any outbuildings and vehicles on the curtilage ("the apartment"). Based on the facts stated herein, I have probable cause to believe that there is inside the apartment property which constitutes evidence of the commission of criminal offenses, specifically, Title 21, United States Code, section 841(a)(1).

4. Because this affidavit is being submitted for the limited purposes of securing complaints against PINA and GOMES, and a search warrant for the above described premises, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that PINA and GOMES violated 21 U.S.C. §841(a)(1), and that evidence of a violation of the statute may be located in PINA's apartment.

5. I have been working with a cooperating witness ("CW") for approximately four months. Among other things, the CW has provided information to me and others concerning narcotics transactions being conducted by PINA and GOMES out of PINA's apartment. More specifically, the CW stated that since at least August of 2003, PINA and GOMES have been selling illegal narcotics from the residence at 26 Sycamore Street, 1st Floor South apartment, New Bedford, Massachusetts. The CW stated that s/he has purchased, and observed several individuals purchase cocaine and crack cocaine from both PINA and GOMES, and that PINA

and GOMES depart the Sycamore Street residence to deliver these narcotics. The CW further stated that PINA and GOMES have told the CW on several separate occasions that they both sell extensive amounts of crack cocaine in addition to the transactions the CW witnessed, and that PINA and GOMES travel together in vehicles to and from the Sycamore Street residence in order to conduct these narcotics transactions.

The CW has past convictions for larceny, armed robbery, drug distribution and intimidation of a witness. He/she has a history of use of narcotics, and he/she receives compensation and potential consideration on open cases for the information that he/she provides to law enforcement.

6. The CW subsequently agreed to, and did in fact make at least three controlled purchases of crack cocaine from individuals connected to the apartment. With respect to each of these transactions, summarized below, I and others met with the CW at a predetermined location and searched him/her to ensure he/she had no narcotics or U.S. currency on his/her person. We also equipped him/her with a recording device and then surveilled the transaction to the extent possible, and then met with the CW at a predetermined location following the transaction to collect the contraband and the recording device.

7. The first transaction took place on April 1, 2004 and involved PINA. The CW telephoned PINA and PINA called the CW back moments later. I listened to the phone conversation. The CW told

PINA that he/she needed "a half of the hard stuff," referring to one half ounce of crack cocaine. PINA agreed to meet the CW in the general vicinity of an area on State Street, in New Bedford, Massachusetts. As noted above, I and others met with the CW at a pre-determined location prior to the transaction, and I searched the CW to ensure that he had no narcotics on his/her person and outfitted him/her with electronic monitoring and recording equipment. We also gave the CW $600.00 in U.S. currency and drove him/her to the location where he/she had agreed to meet PINA. At approximately 6:30 p.m., a white Cadillac Seville drove up to the CW and stopped. The CW leaned in the passenger side window and had a brief discussion with the passenger side occupant of that vehicle. I listened to the CW via the audio monitoring equipment as he/she bought one half ounce of crack cocaine for $600.00, and arranged for a future purchase of a full ounce of crack at a later date. The CW referred to the individual with whom he/she was speaking, as "Mike." After the vehicle departed, the CW returned to a predetermined location and gave me a clear plastic bag containing a substance believed to be crack cocaine. The CW indicated he/she purchased the crack directly from Michael PINA, who was in the front passenger seat of the white Cadillac. I am aware that the Massachusetts Executive Office of Health and Human Services Dept. of Public health State Laboratory Institute (state laboratory) in Boston has examined the substance and confirmed that it is in fact 10.07 grams of crack cocaine.

8. The next controlled purchase occurred on April 6, 2004 and involved both PINA and GOMES. The CW telephoned GOMES at approximately 3:25 p.m. after the CW was unable to reach PINA. I listened as the CW told GOMES that he/she was looking for PINA. GOMES told the CW that he was riding in a car with PINA, and that PINA was "driving to get it" for the CI at that time. PINA called the CW back several minutes later. I listened as the CW told PINA that he/she needed "the usual…hard," referring to one ounce of crack cocaine that PINA normally delivered to the CW. PINA agreed to meet CW in the same area of State Street. Again, I and other law enforcement officers searched the CW prior to the transaction and confirmed that he/she had no narcotics or money, gave him/her $1,200, and fitted him/her with a recording device. As we surveilled him/her, the CW traveled on foot to State Street. Moments later, a white Cadillac Seville drove up to the CW and stopped. The CW leaned into the vehicle and purchased narcotics from the driver, whom the CW referred to as "Mike" and later confirmed to be PINA. After PINA left, we surveilled the CW as he/she returned to a predetermined location. Once there, I searched the CW for contraband and recovered a bag of suspected crack cocaine. I am aware as a result of my investigation that the state laboratory tested the substance and confirmed that it is approximately 24.88 grams of crack cocaine.

9. The next transaction occurred on April 27, 2004 and involved both PINA and GOMES. After law enforcement officers

observed PINA exit the rear door of his apartment at 26 Sycamore Street and enter a dark colored Dodge Intrepid being driven by someone else, we simultaneously had the CW call PINA on his cell phone to arrange another transaction. As I listened to their conversation, PINA agreed to meet the CW near the intersection of State and Campbell Streets in New Bedford. As before, we searched the CW to ensure that he/she had no contraband or money, fitted him/her with a recording device, and gave him/her $600. We then kept him/her under surveillance as he/she traveled to the meeting spot to wait for PINA.

The Dodge Intrepid arrived minutes later. The CW leaned into the car and conducted a transaction with the rear occupant, whom the CW referred to as "Mike" and later confirmed to be PINA. Following the transaction, the CW returned to the predetermined meeting location, and he/she gave me a clear plastic bag containing suspected crack cocaine. I am aware that the state laboratory subsequently tested the substance and determined that it is approximately 14.36 grams of crack cocaine.

10. Moments after the Intrepid left, and unrelated to the transaction we had witnessed, New Bedford Police Officer Stanley Chabrek pulled the vehicle over for a routine traffic stop, almost directly in front of PINA's apartment at 26 Sycamore Street. Officer Chabrek later confirmed that GOMES was driving the vehicle and that PINA, seated in the rear, was the only other occupant. Officer Chabrek released them without incident and the car pulled

into the driveway at 26 Sycamore Street. GOMES and PINA then got out and entered PINA's apartment. Officers placed the building under surveillance and observed PINA enter and exit the apartment several times throughout the afternoon and evening.

11.   I am aware as a result of my investigation that Detective Paul Oliveira and other members of the New Bedford Police Department have conducted surveillance on PINA's apartment numerous times throughout this investigation, including the months of April and May of 2004. Detective Oliveira found that PINA and GOMES departed and returned to 26 Sycamore Street, 1st Floor South, repeatedly throughout the day and night. In his view, the activity he and other officers witnessed is consistent with the selling of narcotics.

12.   In fact, as recently as June 16, 2004, officers observed PINA leave his apartment to engage in what appeared to be a drug transaction with someone other than the CW. Officers placed PINA's apartment under surveillance on that day and, in the course of surveilling the area, one officer observed a male with a bicycle standing on the corner of Maxfield Street and Pleasant Street, not far from PINA's residence. Shortly before 6:00 p.m., a Volvo pulled up behind 26 Sycamore Street. An officer recognized the driver of the Volvo to be a man named Fagbemi Miranda, a known associate of PINA. PINA exited his apartment and entered the Volvo. Miranda then drove onto Pleasant Street from Sycamore Street, and then traveled to the intersection of Pleasant and

Maxfield Streets and pulled the car over. PINA exited the vehicle and walked over to the male that had been standing there. The man gave PINA a sum of currency and PINA handed him an item which PINA pulled out of his right front pants pocket. The man then rode away on his bicycle, and PINA and Miranda drove back to PINA's apartment at 26 Sycamore Street. PINA got out of the car and reentered his apartment, and Miranda drove away in the Volvo. Based on my training and experience, these events are entirely consistent with a hand to hand drug transaction.

13. Based on the foregoing, I have probable cause to believe that PINA possessed crack cocaine with the intent to distribute it on April 1, 6, and 27, 2004, and that GOMES possessed crack cocaine with the intent to distribute it on April 6 and 27, 2004, both in violation of 21 U.S.C. §841(a)(1).

14. Based on my training and experience in connection with narcotics investigations, I know the following to be true:

    a. That drug traffickers often maintain on hand large amounts of United States currency or other negotiable items in order to maintain their ongoing narcotics business and transact the sales of narcotics;

    b. That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, gasoline receipts, money orders, while facilitating the sale of narcotics, and these documents are maintained where the drug trafficker has ready access

to them. It is not uncommon that these records are kept and maintained for periods of time, which can exceed several years;

    c. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, which gives them ready access to such items and the ability to conceal them from law enforcement authorities;

    d. That it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the drug traffickers within their residences, businesses or other locations which they maintain dominion and control over, including safety deposit boxes;

    e. That drug traffickers commonly maintain addresses and telephone numbers in books and/or papers which reflect names, addresses, and telephone numbers for their associates in the narcotics organization; and

    f. That drug traffickers usually keep paraphernalia for packaging, cutting, weighing and distributing the controlled

substances; that these items include, but are not limited to, scales, plastic bags, and cutting agents.

15. Based on the foregoing, I have probable cause to believe that evidence of the commission of criminal offenses and contraband, the fruits of crime, and things otherwise criminally possessed, and property designed and intended for use and which is and has been used as the means of committing a criminal offenses, in violation of Title 21, United States Code, Section 841(a)(1) may be found inside PINA's apartment at 26 Sycamore Street, 1st Floor South, New Bedford, Massachusetts, and accordingly seek permission to seize the items listed below and attached hereto as Schedule A.

## Description of Premises

16. The property at 26 Sycamore Street, New Bedford, Massachusetts, is a two-story structure with natural colored shingles, and dark red wood trim. The structure is located on the west South side of Sycamore Street in New Bedford, Massachusetts. The entrance to the structure faces South, with steps leading from driveway/parking area to the South entrance of 26 Sycamore, 1st Floor South.

## Items to be Seized

17. The items to be seized include the following:

a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging

materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

b.  Cash;

c.  Narcotics or money ledgers, narcotics distribution or customer lists, including but not limited to, pay/owe sheets, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

d.  Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, indicating money which may have been generated from the sale of narcotics.

e.  Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances.

f.  Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

g.  Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and

certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

    h.    Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

    i.    Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations; and

j. Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records.

I certify that the foregoing is true and correct.
Executed at Boston, Massachusetts, this 22 day of June, 2004.

BRENDAN HICKEY
Special Agent, ATF

Subscribed and sworn before me this 22nd day of June, 2004, in Boston, Massachusetts.

CHARLES B. SWARTWOOD, III
United States Magistrate Judge

## SCHEDULE "A"

a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

b. Cash;

c. Narcotics or money ledgers, narcotics distribution or customer lists, including but not limited to, pay/owe sheets, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

d. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, indicating money which may have been generated from the sale of narcotics;

e. Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances;

f. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

g. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the

purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations; and

    j.    Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records.

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:**     Category No. __II__     Investigating Agency __ATF__

City __New Bedford__     **Related Case Information:**

County __Bristol__

Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Daniel Gomes__     Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address _____

Birth date: __1978__   SS#: __8489__   Sex: __M__   Race: __Cape Verdean__   Nationality: __American__

Defense Counsel if known: _____     Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA __Donald L. Cabell__     Bar Number if applicable _____

Interpreter:   ☐ Yes   ☒ No     List language and/or dialect: _____

Matter to be SEALED:   ☐ Yes   ☒ No

☒ Warrant Requested     ☐ Regular Process     ☐ In Custody

**Location Status:**

Arrest Date: _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

Charging Document:   ☒ Complaint     ☐ Information     ☐ Indictment

Total # of Counts:   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony __2__

Continue on Page 2 for Entry of U.S.C. Citations

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: June 22, 2004     Signature of AUSA: _/s/ Cabell_

JS 45 (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    Michael Pina    _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21 U.S.C. §841(a)(1) | Poss. of Cocaine W/Intent to Dist. | 1-2 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**    ATF

daniled gomes js45 complaint.wpd - 3/13/02